# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARION GREER**

Plaintiff,

v.

**TRINITY HOME HEALTH SERVICES, INC**.

Defendant.

Case No.: 2:24-cv-10504-NGE-EAS

Magistrate Judge: Elizabeth A. Stafford

District Judge: Nancy G. Edmunds

## PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT AND NOTICE OF SETTLEMENT

Ackermann & Tilajef, P.C.
Craig J. Ackermann
Brian Denlinger
315 S. Beverly Drive, Ste. 504
Beverly Hills, CA 90212
(310) 277-0614
cja@ackermanntilajef.com
bd@ackermanntilajef.com

Gregory, Moore, Brooks & Clark, P.C.
Matthew J. Clark (P76690)
28 W. Adams, Ste. 300
Detroit, MI 48226
(313) 964-5600
matt@unionlaw.net

Law Offices of Raphael A. Katri, APC
Raphael A. Katri (P86186)
8549 Wilshire Blvd., Ste. 200
Beverly Hills, CA 90211
(310) 940-2034
Attorneys for Plaintiff

Matthew J. Ruza, Bar No. 6321424
mruza@littler.com
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, Illinois 60654
Telephone:   312.372.5520
Fax No.:    312.372.7880

Attorneys for Defendant
TRINITY HOME HEALTH
SERVICES, INC.

# TABLE OF AUTHORITIES

### CASES

*Bartlow v. Grand Crowne Resorts of Pigeon Forge*, 2012 U.S. Dist. LEXIS 181808 (E.D. Tenn. Dec. 26, 2012)……………………………...………..12, 13

*Bert v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio Oct. 23, 2008)……………………………………………………………………19

*Blanchard v. Bergerson*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1988)……………………………………………………………………23

*Castro v. Paragon Indus.*, 2020 U.S. Dist. LEXIS 73765 (E.D. Cal. Apr. 24, 2020)……………………………………………………………………..6

*Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 2008 U.S. Dist. LEXIS 90070 (E.D. Ky. Oct. 23, 2008)…………………………………………….…13

*Dallas v. Alcatel-Lucent USA, Inc.*, 2013 U.S. Dist. LEXIS 71204 (E.D. Mich. May 20, 2013)…………………………………...…………………17, 18, 19

*Date v. Sony Elec., Inc.*, 2013 U.S. Dist. LEXIS 108095 (E.D. Mich. July 31, 2013)………………………………………………...……………..18

*Dover v. Yanfeng United States Auto. Interior Sys. I LLC*, 2023 U.S. Dist. LEXIS 34034 (E.D. Mich. March 1, 2023)……………………………….20, 21, 22

*Farmer v. Ottawa Cnty.*, 2000 U.S. Dist. LEXIS 7224 (6th Cir. Apr. 13, 2000)……………………………………………………………21, 22

*Feiertag v. DDP Holdings, LLC*, 2016 U.S. Dist. LEXIS 122297 (S.D. Ohio Sept. 9, 2016)……………………………………………………………25

*Foster v. Advantage Sales & Mktg., LLC*, 2019 U.S. Dist. LEXIS 213734 (N.D. Cal. Dec. 9, 2019)………………………………………………..……7

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, (W.D.N.Y. 2005)…………….......19

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) .................... ..12, 13

*Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887 (S.D. Ohio June 24, 2011)……………………………………………………………13, 17

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, (E.D. Mich. Oct. 10, 2003)……………………………………………………………………18

*In re F&M Distribs., Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999)……………………………………………………..21

*In re Packaged Ice Antitrust Litig.*, 2012 U.S. Dist. LEXIS 162459 E.D. Mich. Nov. 13, 2012)…………………………………………..……………...18

*Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974)……………………………………………………….......23, 24

*Johnson v. Gerdau Macsteel, Inc.*, Case No. 23-CV-10719-BAF-CI, 2024 (E.D. Mich. Feb. 29, 2024)……………………………………………………..20

*Jones v. JGC Dallas LLC*, 2014 U.S. Dist. LEXIS 177472 (N.D. Tex. Nov. 12, 2014)……………………………………………………………..23, 24

*Lonardo v. Travelers Indem Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010)………..19

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)……………………………………………………………..12, 13

*NILI 2011, LLC v. City of Warren*, 2018 U.S. Dist. LEXIS 181230 (E.D. Mich. Oct. 23, 2018)…………………………………………………21, 22

*O'Brien v. Ed Donnelly Enters., Inc.*,  575 F.3d 567 (6th Cir. 2009)………...…...13

*Osman v. Grube, Inc.*, 2018 U.S. Dist. LEXIS 78222 (N.D. Ohio May 4, 2018)……………………………………………………………..12, 22

*Otey v. Crawdflower, Inc.*, 2015 U.S. Dist. LEXIS 86712 (N.D. Cal. July 2, 2015)…………………………………………………………………..7

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010)………………………………………….……..18

*Perdue v. Kenny A.* 559 U.S. 542, 552, 130 S. Ct. 1662, 176 L. Ed 2d 494 (2010)…………………………………………………………...23

*Pieber v. SVS Vision, Inc.*, 2022 U.S. Dist. LEXIS 41373 (E.D. Mich. Mar. 8, 2022)……………………………………………..……..6, 9, 12, 22

*Pittman v. Things Remembered, Inc.*, 2016 U.S. Dist. LEXIS 143539 (N.D. Ohio Oct. 8, 2014)……………………………………………………………17

*Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591 (S.D. Ohio 2002)………...13

*Rembert v. A Plus Home Health Care Agency, LLC*, 986 F.3d 613, 616 (6th Cir. 2021)…………………………………………………………………23

*Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 U.S. Dist. LEXIS 58912 (N.D. Ohio June 15, 2010)……………………………………………………….22

*Simpson v. Citizens Bank*, 2014 U.S. LEXIS 205466 (E.D. Mich. Jan. 31, 2014)……………………………………………………………..22, 23

*Smyers v. Ohio Mulch Supply, Inc.*, 2021 U.S. App. LEXIS 19634 (6th Cir. July 1, 2021)……………………………………………………………...23

*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Mental Co.*, 732 F.2d 495 (6th Cir. 1984)…………………………………………………………….…...21

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App' 496, 498 (6th Cir. 2011)……………………………………………………………22

*Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 25, 2007)……………..…………………………………………………..18

*Wade v. Werner Trucking Co.*, 2014 U.S. Dist. LEXIS 78341 (S.D. Ohio June 5, 2014)…………………………………………………………..12, 17

*Wilson v. D & N Masonry, Inc.*, 2014 U.S. Dist. LEXIS 62062 (S.D. Ohio May 5, 2014)……………………………………………………………....22

*Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) .......................12

## STATUTES

29 U.S.C. § 201, *et seq*....................................................................... *passim*

29 U.S.C. § 216(b) ................................................................. 12, 13, 21

29 U.S.C. § 206(a) ...............................................................................11

29 U.S.C. § 207(a)(1)................................................................. 11

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................2

   A.  Factual Allegations ........................................................................2

   B.  Procedural History, Informal Discovery, and Settlement Negotiations..........3

III. SUMMARY OF THE SETTLEMENT TERMS ....................................5

   A.  The Settlement .............................................................................5

   B.  The Notice and Opt-In Process.......................................................5

   C.  Releases .......................................................................................8

   D.  Gross Member Payments to Potential Settlement Collective Members .........9

   E.  Attorneys' Fees snd Costs and Plaintiff's General Release Payment ..........10

   F.  Claims Administrator....................................................................11

IV.  COLLECTIVE ACTION SETTLEMENT PROCEDURE.......................11

V.   ARGUMENT .....................................................................................12

   A.  The Settlement Is Fair and Reasonable and Should Be Approved ....... **Error! Bookmark not defined.**

   B.  The Notice Is Sufficiently Informative and Should Be Approved................17

   C.  The General Release Payment Is Fair and Reasonable ...............................17

   D.  The Proposed Attorneys' Fees and Costs Should Be Approved...................21

VI.  CONCLUSION....................................................................................25

## I.     INTRODUCTION

Plaintiff Marion Greer ("Plaintiff") has agreed to resolve this wage and hour lawsuit with Defendant Trinity Home Health Services, Inc. ("THHS" or "Defendant") (together with Plaintiff, the "Parties"), on a collective basis for monetary relief on behalf of approximately 107 current and former, non-exempt, Michigan-based THHS employees who were required to first boot up and log into their computers in order to clock-in for the day between February 28, 2021 to February 5, 2025 (hereinafter "the Collective Period") ("Potential Settlement Collective Members"). Under the Settlement, the Potential Settlement Collective Members will recover compensation for approximately 4.5 minutes of time for booting-up and logging-in per shift within the Collective Period. This is a significant recovery, especially considering the risks of continued litigation and Defendant's legal and factual defenses.

This Settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a *bona-fide* dispute, was reached after contested litigation, and was the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law. Accordingly, Plaintiff files this Unopposed Motion for Approval of Collective Action Settlement and Notice of Settlement (the "Motion") and the Parties respectfully request that the Court issue an order to: (1) certify the FLSA action for settlement purposes only; (2) grant approval of the Settlement Agreement ("Settlement"), attached as Exhibit 1 to the Declaration of Craig J. Ackermann ("CJA Decl."), adjudging its terms to be fair,

reasonable, and adequate, and directing consummation of its terms and provisions;[1] (3) approve Craig J. Ackermann and Brian Denlinger of Ackermann & Tilajef, P.C., Matthew Clark of Gregory, Moore, Brooks & Clark, P.C., and Rafael Katri of The Law Offices of Raphael A. Katri, APC as Collective Counsel; (4) approve the proposed Notice of FLSA Settlement ("Notice," attached as Exhibit A to the Settlement Agreement) and the proposed reminder notice (attached as Exhibit B to the Settlement), and direct their distribution to each Potential Settlement Collective Member; (5) approve the settlement fund of $86,492.00 ("Goss Settlement Amount"), plus actual settlement administration costs and employer-side payroll taxes associated with the W-2 portion of each Gross Member Payment to be paid by Defendant separate and apart from the Gross Settlement Amount; (6) approve the allocation formula for payments to the Settlement Collective Members; (7) approve Plaintiff's General Release Payment of $7,500.00; (8) approve the payment of attorneys' fees of $28,830.66, equaling one-third of the Gross Settlement Amount, and costs of up to $500.00 to Collective Counsel; and (9) approve Atticus Administration, LLC ("Atticus"), the Claims Administer agreed to by the Parties. Defendant does not oppose this Motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A. <u>Factual Allegations</u>

Plaintiff worked for Defendant in 2023 as an Insurance Specialist based out of Michigan. Plaintiff alleges, on behalf of herself and the putative collective, that

---

[1] Unless otherwise indicated, all exhibits are attached to the Declaration of Craig J. Ackermann and all capitalized terms herein are defined as set forth in the Settlement.

Defendant willfully violated the FSLA by permitting Potential Settlement Collective Members to perform labor without payment by requiring them to routinely work "off-the-clock" when booting up and logging into their computers and accessing the virtual private network ("VPN") before they were permitted to clock-in for the day, which was integral and indispensable to the principal activities they were employed by Defendant to perform. ECF No. 8. ¶¶ 34-35. Plaintiff sought recovery for minimum wages, overtime wages, liquated damages, as well as attorneys' fees and costs under FLSA, 29 U.S.C. § 201 *et seq*. *Id*. ¶¶ 6, 33, 37-38, 45.

Defendant denies the allegations in the First Amended Complaint ("FAC"), and maintains it properly paid all federal minimum wages for all time worked and overtime wages owed to Potential Collective Action Members under the FLSA, and that even if Plaintiff was correct on the merits of her claim, a putative collective action could not be certified because Potential Collective Action Members were not similarly situated. ECF No. 13. ¶¶ 5-6, 14, 17-18. Further, Defendant maintained that at all times it acted in good faith, and contends that Plaintiff would not be entitled to liquidated damages under the FLSA.

### B. <u>Procedural History, Informal Discovery, and Settlement Negotiations</u>

On February 28, 2024, Plaintiff filed her Class and Collective Action Complaint with respect to the claims asserted. CJA Decl., ¶ 16. On April 1, 2024, the District Court declined to exercise supplemental jurisdiction over Plaintiff's state law claim by issuing an Order Dismissing Plaintiff's State Law Claims Without Prejudice. *Id.*; Settlement, ¶ 2; ECF No. 3. On May 14, 2024, Plaintiff filed her FAC to remove the Cause of Action under the Michigan Workplace Opportunity Wage

Act. ("WOWA"). CJA Decl., ¶ 16; Settlement, ¶ 2; ECF No. 8.

In May 2024, the Parties, through their attorneys, agreed to attempt early resolution of the case through private mediation after an informal exchange of discovery and information. CJA Decl., ¶ 17. On July 3, 2024, the Parties scheduled private mediation with experienced mediator, Michael Russell to take place on November 18, 2024. *Id*. In September and October 2024, the Parties, through their attorneys, engaged in direct, arm's-length pre-mediation settlement negotiations. *Id*. ¶ 18. On November 1, 2024, the Parties postponed their mediation to March 3, 2025, and continued to engage in direct settlement negotiations. *Id*. On December 23, 2024, Defendant's counsel provided Plaintiff's counsel with updated data regarding the putative collective members, including, *inter alia*, the total number of Potential Settlement Collective Members during the Collective Period, the total number of shifts worked by the Potential Settlement Collective Members during the Collective Period, and the average rate of pay of the Potential Settlement Collective Members during the Collective Period. *Id*. After continued negotiations via telephone and email, on February 5, 2025, the Parties, through their attorneys of record, agreed to resolve this matter on a collective basis, which was subsequently supplemented and memorialized by the Settlement. Settlement, ¶ 3; CJA Decl., ¶ 18.

Between February 5, 2025 and March 21, 2025, the Parties exchanged long-form settlement agreement and Notice of Collective Action Settlement drafts, and developed an Opt-In process. *Id.* ¶ 19. The Parties ultimately finalized and fully executed the Settlement on April 2, 2025. *Id.*

*///*

### III.   SUMMARY OF THE SETTLEMENT TERMS

The Settlement provides monetary relief to address Plaintiff's concerns with Defendant's timekeeping and boot-up policies and to compensate Potential Settlement Collective Members, as discussed *infra*.

#### A. <u>The Settlement</u>

The Gross Settlement Amount is $86,492.00,[2] which covers: (a) the Potential Settlement Collective Members' Gross Member Payments, totaling a maximum of $49,661.34; (b) $7,500.00 to the Named Plaintiff as consideration for her broader general release of claims and her time and effort on behalf of the Settlement Collective (the "General Release Payment"); and (c) attorneys' fees in the amount of $28,830.66 (i.e., 1/3 of the Gross Settlement Amount); and $500 for Collective Counsel's actual out-of-pocket litigation costs. Settlement, ¶¶ 9(m)-(p), 17.

#### B. <u>The Notice and Opt-In Process</u>

The Settlement is intended to compensate 107 Potential Settlement Collective Members. *Id.* ¶¶ 23-24. Within 17 days after the Court approves the Settlement, Defendant shall provide the Claims Administrator with the names, last known addresses, last known email addresses, phone numbers, location(s) worked, total number of Qualifying Workweeks, "Random ID" numbers, and Social Security numbers (the "Potential Settlement Collective Member List"), of all Potential Settlement Collective Members. *Id.* ¶¶ 22-23. Within 21 days after the Effective

---

[2] The employer-side payroll taxes associated with the W-2 portion of each Gross Member Payment and all actual claims administration costs will be paid by Defendant separate and apart from the Gross Settlement Amount.

Date of the Settlement, i.e., when the Court approves the Settlement and the Settlement becomes "Final," Defendant will deposit the Gross Settlement Amount, Claims Administration costs, and the Employer Payroll Taxes in the Qualified Settlement Fund ("QSF") established by the Claims Administrator. *Id.* ¶¶ 11, 20.

Within 28 days after the Effective Date, the Claims Administrator will mail Notices and Settlement Checks (together, the "Notice Packets") to all Potential Settlement Collective Members, mail the General Release Payment to the Named Plaintiff, and distribute the court approved Fee Award to Collective Counsel. *Id.* ¶¶ 21, 27. The Notice will advise the Potential Settlement Collective Members of the Settlement and advise them that by signing and cashing or depositing the Settlement Check, they will individually release Defendant and the Releasees from any and all wage and hour claims that could have been asserted based on the facts set forth in the FAC during the period from February 28, 2021 through the date the Court grants approval of this Motion. *Id.* ¶¶ 14, 27. The back of the Settlement Checks will also contain similar release language.[3] *Id.* ¶ 15. If an original Notice Packet is returned

---

[3] This Court, and other federal district courts, have routinely approved a similar "back of the check" opt-in process in other FLSA collective actions. *See Pieber v. SVS Vision, Inc.*, 2022 U.S. Dist. LEXIS 41373, at *4 (E.D. Mich. Mar. 8, 2022) (approving an FLSA settlement where "'by signing, cashing, depositing or otherwise negotiating the [settlement] check,' [Eligible Class Members] will provide Defendant with a release of their overtime misclassification wage and hour claims under the FLSA and applicable state wage and hour laws" and concluding that "[t]he one-step approval process requested is appropriate because it satisfies all procedural and substantive prerequisites for approval of an FLSA collective action."). *See also Castro v. Paragon Indus.*, 2020 U.S. Dist. LEXIS 73765, at *8, n.3 (E.D. Cal. Apr. 24, 2020) (granting preliminary approval to settlement and noting that "FLSA Members need only cash their FLSA Payment Check to opt-in

as undeliverable with a forwarding address provided by the United States Postal Service, the Claims Administrator will promptly resend a Notice Packet to that forwarding address. *Id.* ¶ 28. If an original Notice Packet is returned as undeliverable and without a forwarding address, the Claims Administrator will perform a skip trace, and if it obtains a more recent address, will resend a Notice Packet to the new address. *Id.* Potential Settlement Collective Members' Settlement Checks will expire 90 days following their issuance (the "Acceptance Period"). *Id.* ¶¶ 9(a), 26, 34.

On a bi-weekly basis, the Claims Administrator shall send a tracking spreadsheet which informs counsel for the Parties of, *inter alia*, when Settlement Checks have been mailed and/or reissued, and when Settlement Checks have been deposited or cashed. *Id.* ¶ 32. The Claims Administrator shall also mail and email— to the extent email addresses are available—a separate reminder to all Potential Settlement Collective Members who have not yet opted into the Settlement by signing and depositing or cashing their Settlement Checks, to inform them of the 90-day deadline, forty-five days after the initial mailing of the Notice Packets. *Id.* ¶¶ 9(a), 26, 34, Ex. B. After the Acceptance Period expires, all uncashed Settlement Checks will revert back to Defendant. *Id.* ¶ 25. Any Potential Settlement Collective

---

to the FLSA Settlement"); *Otey v. Crowdflower, Inc.*, 2015 U.S. Dist. LEXIS 86712, at *8 (N.D. Cal. July 2, 2015) (noting that "Provisional class members must negotiate the settlement award check to opt in to the settlement and release their claims."); *Foster v. Advantage Sales & Mktg., LLC*, 2019 U.S. Dist. LEXIS 213734, at * (N.D. Cal. Dec. 9, 2019) ("Any member of the FLSA Collective who wishes to participate in the settlement can cash the settlement check within 180 days of the initial mailing of the checks. Such individuals who timely cash their settlement check will be deemed to have filed a written consent to join this Collective Action….").

Member who does not timely sign and deposit or cash their Settlement Check will not be bound by any release of claims. *Id.* In the event of any dispute concerning whether a Potential Settlement Collective Member has timely and properly decided to not participate in the Settlement, Counsel for the Parties shall meet and confer in good faith to resolve such dispute. *Id.* ¶ 27.

## C. **Releases**

The Settlement Collective Members, i.e., those Potential Settlement Collective Members who participate in the Settlement by signing and depositing or cashing their Settlement Check, "shall individually release the Releasees[4] from any and all state, local, or federal claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against Releasees for any and all wage and hour claims that were or could have been asserted based on the facts set forth in the Complaint, including but not limited to claims for alleged unpaid wages and overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution, or other compensation and relief for the failure to properly pay such to Plaintiffs, arising under the FLSA, the WOWA, or any other federal, state, or local wage-related law with respect to the time that they were employed by THHS during the period of February 28, 2021 through the date the Court grants an order approving Plaintiff's Approval Motion (the "Released Claims")." *Id*. ¶ 14. The Potential

---

[4] Releasee means Defendant and its parents, subsidiaries, related entities, and affiliates (including their directors, officers, shareholders, owners, employees, attorneys, partners, and agents, past, present and future), and each of their respective predecessors, successors, transferees, and assigns. Settlement, ¶ 9(z).

Settlement Collective Members who do not participate by signing and depositing or cashing their Settlement Check will not release any claims. *Id.* ¶ 25.

### D. <u>Gross Member Payments to Potential Settlement Collective Members</u>

The amount remaining in the Gross Settlement Amount after all applicable deductions (a maximum of $49,661.34), i.e., the Gross Member Payments, will be paid to Potential Settlement Collective Members whereby each shall receive a "Minimum Payment" of Fifty Dollars ($50.00) from the Gross Member Payments (collectively, the $5,350 in Minimum Payments is referred to as the "Aggregate Minimum Payments."). Settlement, ¶ 24(b)(ii)(1). The amount of the Gross Member Payments less the Aggregate Minimum Payments is the "Net Member Payment Balance." *Id*. As to the distribution of the Net Member Payment Balance, each Potential Settlement Collective Member shall be assigned one (1) point for each workweek they worked during the Collective Period ("Qualifying Workweeks"). *Id*. ¶¶ 9(y), 24(b)(ii)(2). To calculate each Potential Settlement Collective Member's proportionate share of the Net Member Payment Balance, all points for all Potential Settlement Collective Members will be added together to obtain the "Denominator" and each Potential Settlement Collective Member's respective points will be divided by the Denominator to obtain their "Portion of the Net Member Payment Balance".[5] *Id*. ¶ 24(b)(ii)(3)(a)-(b). Each Potential Settlement Collective Member's Portion of

---

[5] *See Pieber*, 2022 U.S. Dist. LEXIS 41373 at *5 (approving "back of the check" FLSA settlement where "Eligible Class Members' payments were calculated based on a formula that divided each member's points, which were based on the number of 'Eligible Work Week[s]'").

the Net Member Payment Balance shall be multiplied by the Net Member Payment Balance to determine each Potential Settlement Collective Member's "Individual Share of the Net Member Payment Balance." *Id*. ¶ 24(b)(ii)(3)(c). Each Potential Settlement Collective Member's individual Net Member Payment shall be the total of the $50.00 Minimum Payment plus any Individual Share of the Net Member Payment Balance. *Id*. ¶ 24(b)(ii)(4).

One-third (33.33%) of the Net Member Payments will be eligible for distribution to the Settlement Collective Members as "Net Wage Payments" and treated as owed wages. *Id*. ¶ 24(a). Two-thirds (66.67%) of the Net Member Payments will be eligible for distribution to the Settlement Collective Members as liquidated damages that will be treated as income through a Form 1099. *Id*. ¶ 24(b).

**E. <u>Attorneys' Fees and Costs and Plaintiff's General Release Payment</u>**

The Settlement provides that Defendant shall pay Collective Counsel's attorneys' fees equaling 1/3 of the Gross Settlement Amount plus reimbursement of Collective Counsel's actual out-of-pocket litigation costs of $500, subject to Court approval. *Id*. ¶¶ 9(m), 21(b). *See also* CJA Decl., ¶ 29 (as of March 3, 2025, Plaintiff's counsel…has incurred $500.00 in litigation costs). The Settlement further provides that Defendant shall pay Plaintiff a General Release Payment of $7,500 as consideration for her global general release of claims and her time and efforts on behalf of the Settlement Collective, subject to approval by the Court. Settlement, ¶¶ 9(n)-(o), 21(a). Plaintiff's General Release Payment will be in addition to her Gross Member Payment, and she must execute a full general release of all claims against Defendant through the date the general release is signed. *Id*. ¶¶ 9(n), 17, 21(a).

**F. <u>Claims Administrator</u>**

The Parties agree and propose that the Court appoint Atticus as the Claims Administrator. CJA Decl., ¶ 28. Atticus is experienced in administering collective action settlements and has estimated its fee for this Settlement not to exceed $4,800. *Id*. Defendant shall pay the Claims Administrator costs on top of and in addition to the Gross Settlement Amount. Settlement, ¶¶ 9(o), 12, 20.

## IV.   COLLECTIVE ACTION SETTLEMENT PROCEDURE

This litigation involves claims for alleged failure to pay the federal minimum wage rate for all time worked, including time spent during the boot-up process prior to clocking in each shift and overtime wages at 1.5 times the regular rates of pay to covered nonexempt employees under the FLSA, 29 U.S.C. § 201 *et seq*. The FLSA provides in part that, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages..." and "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

Plaintiff seeks approval of this collective action using a one-step settlement approval process wherein the collective action will be certified for settlement

purposes only and notice will be issued. Settlement, ¶¶ 5, 11, 27. "A one-step settlement approval process in FLSA collective actions is appropriate." *Osman v. Grube, Inc.*, 2018 U.S. Dist. LEXIS 78222, at *3-4 (N.D. Ohio May 4, 2018) (citing cases). *See also Pieber*, 2022 U.S. Dist. LEXIS 41373 at *9 (approving one-step approval process as appropriate "because it satisfies all procedural and substantive prerequisites for approval of an FLSA collective action."). This is because, unlike a Rule 23 class action, "[c]ollective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation…." *Osman*, 2018 U.S. Dist. LEXIS 78222, at *4; *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA…."). "Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions." *Osman*, 2018 U.S. Dist. LEXIS 78222, at *4 (citing *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982)). Courts in this Circuit have approved one-step FLSA settlements. *See Pieber*, 2022 U.S. Dist. LEXIS 41373 at *9; *Osman*, 2018 U.S. Dist. LEXIS 78222 at *13-14.

## V.    ARGUMENT

### A. <u>The Settlement Is Fair and Reasonable and Should Be Approved</u>

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982); *Wade v. Werner Trucking Co.*, 2014 U.S. Dist. LEXIS 78341, at *2-3 (S.D. Ohio June 5, 2014); *Bartlow v.*

*Grand Crowne Resorts of Pigeon Forge*, 2012 U.S. Dist. LEXIS 181808, at *4 (E.D. Tenn. Dec. 26, 2012). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.[6] *Lynn's Food Stores*, 679 F.2d at 1354; *Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887, at *6-7 (S.D. Ohio June 24, 2011); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 2008 U.S. Dist. LEXIS 90070, at *30 (E.D. Ky. Oct. 23, 2008). "Settlement is the preferred means of resolving litigation." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *30 (FLSA collective action).

The FLSA settlement in this case meets the standard for approval. The Settlement was the result of a thorough investigation, contested litigation, and arm's-length negotiations. CJA Decl., ¶ 18. Recognizing the uncertain legal and factual issues involved, the Parties reached the Settlement pending before the Court. *Id.* ¶ 22. At all times during the settlement negotiation process, negotiations were conducted at arm's-length. *Id.* ¶¶ 17-19. The settlement amount is substantial in light of the considerable risk that Plaintiff and the Potential Settlement Collective Members faced. *Id.* ¶22.

---

[6] Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike in a Fed. R. Civ. P. 23 class action. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA"); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002) ("[I]n an FLSA "opt-in" collective action the requirements need not be strictly observed because there are no absent class members for the court to protect.").

First, there was a risk that Plaintiff would not succeed in her motion for conditional certification and then maintaining a collective through trial. Even if Plaintiff was to prevail on her motion for conditional certification, a real possibility remained that Defendant could prevail on a motion for decertification. Defendant maintained that most of its employees do not boot up a computer before clocking in to start their shifts. CJA Decl., ¶ 22. Specifically, Defendant confirmed that besides Plaintiff, who was employed by Defendant as an insurance specialist who worked remotely, only twelve other employees worked the same job position as Plaintiff during the Collective Period, and the other Potential Settlement Collective Members worked various job positions. *Id*. Moreover, Defendant maintains that there are only a few other "computer-based" job positions where its employees use a computer to log-in for the day (i.e., requiring boot-up time), whereas most of its employees clock-in and out for the day using its Kronos timekeeping system, either through its Kronos timeclocks or its Kronos call-in phone number. *Id*.

Furthermore, Defendant contends that its employees that clock-in through a computer system (i.e., Potential Settlement Collective Members) rarely turn their computers off between shifts, and Defendant argued that boot-up time, if any, did not take Potential Settlement Collective Members anywhere near five to ten minutes of time each shift as alleged in the FAC; rather, in Defendant's view, there is normally no boot-up time by Potential Settlement Collective Members, and when there is boot-up time, Defendant argued it would only take Potential Settlement Collective Members approximately two minutes per shift. *Id*. Plaintiff contends that her boot-up claim is not limited to the act of turning on her computer at the start of

her shift, but also includes the requirement of logging into or using other various computer software programs or applications (i.e., Defendant's multifactor authentication system, payroll system, and VPN) prior to being able to clock-in for shifts. *Id*. Thus, Defendant would have asserted that decertification is appropriate because of the claimed factual disparity of the Potential Settlement Collective Members' claims and the separate proof necessary to establish whether, why, and how they were not compensated for boot-up time. *Id.*

Second, even if this case could proceed to trial on a collective basis, a trial on the merits would involve significant risks as to both liability and damages. *Id*. ¶ 23 During its investigation into Plaintiff's claims, Defendant confirmed that there is scant VPN data to gather which would capture the amount of Potential Settlement Collective Members' boot-up time per shift, and all such VPN data is maintained by a third-party. *Id*. Specifically, Defendant asserts that such VPN data only reflects the period of time from (a) when employees accessed the VPN, and (b) when they clocked-in for the day; however, it does not reflect the amount of time between when employees (a) started booting up their computer, and (b) accessed the VPN. *Id*. Furthermore, Defendant asserts that there are no other computer applications that provide pre-clock in time stamps besides the VPN, and the VPN data is not helpful in capturing the amount of boot-up time per shift because the VPN never "logs off" on employee computers. *Id.* Rather, unless an employee is required to reboot their computer for a software update (or something of that nature, which is rare), then the employee's VPN log-in and log-outs are few and far between because it is always on. *Id.*

Third, despite the strength of Plaintiff's collective claims on the merits, she fully recognizes that she would face significant legal and procedural hurdles in establishing liability and damages. *Id*. ¶ 24. Plaintiff recognizes the substantial risks of the litigation, including the possibility that the case, if not settled now, might result in no recovery or a far less favorable recovery to her and the Potential Settlement Collective Members. *Id*. Plaintiff is also aware that if the action continued, any recovery may not occur for several years. Similarly, additional litigation would result in considerable expense to the Parties, and such resources have been put toward resolving the claims. *Id*. This case is a complex, collective action that carried significant risks for the Parties as to both legal and factual issues. *Id*. The Parties agreed to settle the case in order to avoid the burden, expense, and uncertainty of litigating the claims. There is no question that litigating the case to trial would require substantial time and expenses in addition to that already expended. *Id*. Thus, additional litigation undoubtedly would increase the expenses and complexity of this litigation. *Id*.

Fourth, Defendant could argue a good faith defense as to Plaintiff's claim for liquidated damages, i.e., that Plaintiff could not demonstrate that Defendant acted willfully. *Id*. ¶ 25.

Plaintiff and her counsel, who are experienced class and collective action employment attorneys, understand the resolution of these liability issues, certification issues, the outcome of a trial, and a likely appeal are inherently uncertain in outcome and duration. *Id*. The Parties respectively continue to believe that their positions are correct, and the Court accordingly should conclude that a

bona fide dispute between the Parties exists. *See Pittman v. Things Remembered, Inc.*, 2014 U.S. Dist. LEXIS 143539, at *4 (N.D. Ohio Oct. 8, 2014) (acknowledging a *bona fide* dispute exists when the parties both continue to insist that their legal positions are correct). Without the Parties' willingness to engage in settlement discussions, this case would not have been resolved. Although the Parties have decidedly different views of the merits of the litigation, both agree the Settlement is fair, reasonable, and represents a reasonable compromise of the bona fide, disputed issues in this case. Accordingly, Plaintiff requests that the Court approve the Settlement, certify the collective action for settlement purposes, and approve the proposed Notice and direct its mailing.

### B. <u>The Notice Is Sufficiently Informative and Should Be Approved</u>

The Court should also approve the proposed Notice. *See* Exhibit A to the Settlement. The Notice informs Potential Settlement Collective Members of the terms of the Settlement, including the allocation formula, how they may participate, the Settlement payment to which they are entitled, the release they provide the Releasees by signing and depositing or cashing the Settlement Check, and the General Release Payment and attorneys' fees and costs. *Id*.; *see also Wade*, 2014 U.S. Dist. LEXIS 78341, at *3 (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Gentrup*, 2011 U.S. Dist. LEXIS 67887,  at *12 (same).

### C. <u>The General Release Payment Is Fair and Reasonable</u>

The requested General Release Payment to the Named Plaintiff of $7,500 is

also fair and reasonable. As an initial matter, "[C]lass representatives who have had extensive involvement in a…litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Dallas v. Alcatel-Lucent USA, Inc.*, 2013 U.S. Dist. LEXIS 71204, at *30 (E.D. Mich. May 20, 2013); *accord Date v. Sony Elec., Inc.*, 2013 U.S. Dist. LEXIS 108095, at *41 (E.D. Mich. July 31, 2013) (approving $7,000 incentive payment to the class representative for his time and effort as the class representative, and noting that such awards have been approved in the Sixth Circuit, "largely in common fund cases.").

Courts acknowledge that plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2012 U.S. Dist. LEXIS 162459, at *48 (E.D. Mich. Nov. 13, 2012) (service awards are "well deserved" when class representative spent "time and effort…all to the general benefit of the class") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. Oct. 10, 2003)); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee…and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

Incentive awards are within the discretion of the court. *See Dallas*, 2013 U.S.

Dist. LEXIS 71204, at *14; *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in class action cases and are within the discretion of the court."; Incentive "awards are particularly appropriate in the employment context."). In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of class or collective action members, and whether those actions resulted in substantial benefit to class or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation. *See, e.g.*, *Bert v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 111711, at *10 (S.D. Ohio Oct. 23, 2008); *Dallas*, 2013 U.S. Dist. LEXIS 71204, at *29-30 (in common fund cases, class representatives "deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (same).

Here, Plaintiff's General Release Payment of $7,500 is explicitly in consideration for her time and efforts on behalf of the Settlement Collective and her agreement to not only release the claims alleged in this action, which all Settlement Collective Members are agreeing to release (see Settlement, ¶ 14), but Plaintiff has also agreed to a broader general release of claims. *See id.* at ¶ 17. The proposed General Release Payment is reasonable given the time and effort that Plaintiff devoted to this case, the valuable assistance she provided to her counsel, and the fact that she entered into a general release of claims that is broader than the release of the Settlement Collective Members. Declaration of Marion Greer ("MG Decl.") ¶¶ 5-6.

Indeed, Plaintiff initiated this action to represent the Potential Settlement

Collective Members when no other employees were willing to do so. Plaintiff assumed significant risk in bringing this litigation—namely, had she lost, she could have been ordered to pay Defendant's costs. *Id.* Plaintiff provided invaluable assistance to her counsel and the Potential Settlement Collective Members in this case, including providing factual background for settlement discussions and the Complaint; participating in several interviews and phone conferences over several months to discuss litigation and settlement strategy; searching for and producing relevant documents, reviewing pleadings and documents in the case; reviewing documents and data provided by Defendant and information about Defendant's timekeeping and login policies and practices; and reviewing the settlement documents and this Motion. *Id.* ¶ 5. This case also involved risks for Plaintiff, including reputational and retaliation risks. *Id.* ¶ 6. Plaintiff agreed to undertake the financial and reputational risk of serving as the named Plaintiff and exposed herself to the risk of negative publicity or retaliation by anyone who opposed this case. *Id.* Regardless of these risks, Plaintiff pursued this case on behalf of the Potential Settlement Collective Members to a successful resolution and settlement and agreed to participate in this case with no guarantee of personal benefit. *Id.*

Furthermore, this Court has approved similar, or larger, service awards in other employment class and collective actions than the General Release Payment proposed here. *See Johnson v. Gerdau Macsteel, Inc.*, No. 2:23-cv10719-BAF-CI, Order Granting Plaintiffs' Unopposed Motions for Final Approval of Class Action Settlement, ECF No. 15 (E.D. Mich. Feb. 29, 2024) (approving service award to named plaintiff in the amount of $10,000); *Dover v. Yanfeng United States Auto.*

*Interior Sys. I LLC*, 2023 U.S. Dist. LEXIS 34034, at *13-16 (E.D. Mich. March 1, 2023) (granting approval to class action settlement, including $10,000 incentive awards to each of the three named plaintiffs); *NILI 2011, LLC v. City of Warren*, 2018 U.S. Dist. LEXIS 181230, at *13 (E.D. Mich. Oct. 23, 2018) (granting approval to class action settlement, including $10,000 incentive awards to each of the named plaintiffs); *In re F&M Distribs., Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090, at *21 (E.D. Mich. June 29, 1999) (granting approval to incentive awards of $7,500 to each of the class representatives).

Accordingly, because Plaintiff took significant personal risks in representing the interests of the Potential Settlement Collective Members, worked diligently to ensure the Potential Settlement Collective Members could recover wages they are allegedly owed, including through assistance before and during arm's-length settlement negotiations, and agreed to a general release of claims in addition to releasing her FLSA claims, Plaintiff respectfully requests that the Court approve the Parties' agreed General Release Payment as fair and reasonable.

### D. **The Proposed Attorneys' Fees and Costs Should Be Approved**

The FLSA provides for reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b) ("The court in [an FLSA action] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). *United Slate Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984). "The purpose of the FLSA attorney's fees provision is to 'insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'"

*Farmer v. Ottawa Cnty.*, 2000 U.S. Dist. LEXIS 7224, at *20 (6th Cir. Apr. 13, 2000) (citation omitted); *see Wilson v. D & N Masonry, Inc.*, 2014 U.S. Dist. LEXIS 62062, at *3 (S.D. Ohio May 5, 2014) ("[T]he purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.") (internal quotations and citations omitted).

There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App' 496, 498 (6th Cir. 2011)). The Sixth Circuit has approved both methods, "Courts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs[,]" and "[o]ne-third of the common fund is a reasonable attorneys' fee award and has been approved in similar FLSA collective actions" in the Sixth Circuit. *Id.* (internal quotations and citations omitted). *See also Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 U.S. Dist. LEXIS 58912, at *23-24 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees and citing to four other Sixth Circuit FLSA collective actions where one-third of the common fund was awarded as reasonable fees); *Pieber*, 2022 U.S. Dist. LEXIS 41373 at *3, 8 (approving attorneys' fees of 40% of the common fund in an FLSA settlement); *Dover*, 2023 U.S. Dist. LEXIS 34034, at *13-16 (awarding attorneys' fees of 33.33% of the common fund); *NILI 2011, LLC*, 2018 U.S. Dist. LEXIS 181230, at *13 (awarding attorneys' fees of 37.5% of the common fund); *Simpson v. Citizens Bank*, 2014 U.S. LEXIS 205466

*17 (E.D. Mich. Jan. 31, 2014), ("Class Counsel's request for 33% of the common fund created by their efforts is well within the benchmark range and in line what is often awarded in this Circuit.").

"The lodestar method, which calculates counsel's reasonable hourly rate and the number of hours that counsel reasonably expended on the case, is presumptively adequate to achieve the[] goals" of determining a reasonable fee. *Smyers v. Ohio Mulch Supply, Inc.*, 2021 U.S. App. LEXIS 19634 *5 (6th Cir. July 1, 2021) (citing *Rembert v. A Plus Home Health Care Agency, LLC*, 986 F.3d 613, 616 (6th Cir. 2021)). There is a strong presumption that the lodestar figure is a reasonable fee amount. *Perdue v. Kenny A.*, 559 U.S. 542, 555 (2010).

After the Court determines the lodestar, the Court must determine whether it should be adjusted based on the circumstances of the case and the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1988). The factors set forth in *Johnson* are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. "'[N]ot every [*Johnson*] factor need be necessarily considered', however." *Jones v. JGC Dallas*

23

*LLC*, 2014 U.S. Dist. LEXIS 177472, at *22 (N.D. Tex. Nov. 12, 2014).

Here, Collective Counsel's request for attorneys' fees equaling one-third of Gross Settlement Amount is also fair and reasonable under the lodestar method. The fee agreed to by the Parties is substantially less than Collective Counsel's "lodestar" figure. Furthermore, the application of the *Johnson* factors to this case supports the reasonableness of the attorneys' fees sought. Regarding the time and effort required of Collective Counsel's (factors 1, 7, and 11), Plaintiff retained her counsel in this matter in January 2024 and lengthy negotiations took place with Defendant's counsel before a settlement was reached, as discussed herein. CJA Decl., ¶¶ 16-18. Collective Counsel devoted a significant amount of time to reach resolution of this case. To date, Collective Counsel have expended 198.34 hours on this action, with a total lodestar of $127,396.06. *Id*. ¶ 29, Ex. 3.

Regarding the second and tenth factors, Plaintiff refers the Court to Section V.A, *supra*, which details the many factual and legal obstacles to prevailing on the merits, and which demonstrates the novelty and difficulty of the questions posed and the "undesirability" of the case. As to the third and ninth factors, Collective Counsel have zealously and competently represented Plaintiff's and Potential Settlement Collective Members' interests and have extensive experience litigating complex employment class and collective actions. CJA Decl., ¶¶ 3-14. Collective Counsel have done substantial work identifying, investigating, prosecuting, and settling the collective claims here. *Id.* ¶¶ 17-19. They also have substantial experience prosecuting and settling employment class, collective, and individual actions, and courts have repeatedly appointed Collective Counsel to be class or collective counsel

in employment actions. *Id.* ¶¶ 3-19. Further, Collective Counsel's acceptance of this case (factor 4), and the considerable time and effort expended on this case, has precluded time that they could have spent pursuing other matters. Regarding the fifth and twelfth factors, as noted in this section, district courts in the Sixth Circuit commonly award percentages of one-third for attorneys' fees involving a common fund in class and FLSA collective actions.

Regarding the eighth factor, the degree of success here is high because Defendant vigorously contested Plaintiff's claims and denied that they were underpaid, or that any alleged damages are owed. Here, each Michigan-based THHS employee who was required to first boot up and log into their computer in order to clock-in for the day during the Collective Period is eligible to opt-in to the Settlement and to be paid a substantial Gross Member Payment.

Finally, Collective Counsel's $500 in litigation costs were incidental and necessary to the representation of Plaintiff and the Settlement Collective and are in line with costs charged to individual clients who pay out-of-pocket. CJA Decl. ¶ 29. These costs include filing and process costs. *Id.*; *see Feiertag v. DDP Holdings, LLC*, 2016 U.S. Dist. LEXIS 122297, at *22 (S.D. Ohio Sept. 9, 2016) (awarding "out-of-pocket costs incurred in litigation" because they "were necessary to litigate this case"). The Court should approve Collective Counsel's request for reimbursement of $500 in necessary out-of-pocket litigation costs.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and enter the Proposed Order.

Dated: April 15, 2025

/s/ Matthew J. Clark
Matthew J. Clark, Esq. (P76690)
Gregory, Moore, Brooks & Clark, P.C.
28 W. Adams Ave., Suite 300
Detroit, MI 48226
(313) 964-5600
Email: matt@unionlaw.net

Craig J. Ackermann, Esq.
Brian W. Denlinger, Esq.
ACKERMANN & TILAJEF, P.C.
315 S. Beverly Drive, Suite 504
Beverly Hills, CA 90212
Telephone: (310) 277-0614
E-mail: cja@ackermanntilajef.com
        bd@ackermanntilajef.com

Rafael Katri, Esq.
Law Offices of Raphael A. Katri, APC
8549 Wilshire Blvd., Suite 200
Beverly Hills, CA 09211
(310) 940-2034
Email: rkatri@katrilaw.com

*Attorneys for Plaintiff*